Williams, J.
On the 20th day of November, 1893, the plaintiffs in error, J. P. Buffington and John Reuter, became sureties for Charles E. Bron *232 son, on hi s bond as executor of the last will and testament of Maria Lehman, deceased, late of Defiance county. The bond was in the sum of one thousand dollars, and conditioned according to law. In March, 1894, they made their application to the probate court to compel the executor to render an account, and to indemnify them by bond, with sureties, against their liability. The application was sustained by the court, and, in pursuance of its order, Bronson with the other defendants in error as his sureties, executed and filed in the probate court on the 3rd day of April, 1894, the following bond:
“Know all men by these presents that wc, Charles E. Bronson, as principal, and J. M. Sanders and Emanuel Miller, are held and firmly bound unto J. P. Buffington and John Reuter, in the sum of eight hundred ($800.00) dollars, for the payment of which, well and truly to be made, we do hereby bind ourselves, our heirs, executors and administrators.
Witness our hands and seals this 31st day of March, 1894.
“The condition of this obligation is such, that Avhereas the above named J. P. Buffington and John Reuter are sureties for the said Charles E. Bronson, in a certain bond as executor of the estate of Maria Lehman.
“Now, therefore, if the said Charles E. Bronson shall save and keep the said J. P. Buffington and John Reuter harmless from all loss or damage by reason of being sureties on the said bond for Charles E. Bronson as such executor of the estate, then this obligation to be void, otherwise, to- be and remain in full force and virtue in law.
“Emanuel Miller.”
“J. M. Sanders,
“Charles E. Bronson,
*233 . This bond was approved by the court on the 14th day of April, 1894, and the executor remained in office until the December following, when his final account was settled, and his resignation tendered and accepted, and Josiah McElroy appointed his successor. On the settlement of the executor’s account the court found there was a balance of $506.91, in his hands subject to distribution, one-half of which he had, on settlement of his first account, been ordered to pay to Mary E. Wank, who the court found was entitled thereto under the will, and the other half he was ordered to pay to his successor, the administrator de bonis non with the will annexed. Mary E. Wank, after due demand, brought suit against Bronson and the sureties on his bond, to recover the amount so ordered to be paid to her, and recovered judgment for the same, which, amounting, with interest and costs, to the sum of $284.14, was paid by the sureties. The administrator brought a like action to recover the amount which the executor was ordered to pay to him, and recovered judgment therefor, which the sureties on the executor’s bond also paid. These sureties, after the payment of the Wank judgment, commenced the first of the actions below, against the defendants in error, on the indemnity bond executed by them, to recover the amount which the plaintiffs had been compelled to pay in satisfaction of the judgment; and, after the payment of the judgment recovered by the administrator, commenced the second of the actions below, against the same parties, on the same bond, for the recovery of the amount paid on that judgment. The petitions alleged, substantially, the facts already stated. The answer in each, case set up as a defense, that the money, for the payment of which the executor was in *234 default, on account of which default the judgments against the plaintiffs were recovered, came to the hands of the executor before the execution of the indemnity bond, and distribution thereof according to law had been ordered by the probate court on the settlement of a prior account of the executor ; and that, no assets of the estate were received by him after the indemnity bond was given; and furthermore, “that there, was no consideration at any time moving from said Charles E. Bronson, or the said plaintiffs for the execution and delivery of said indemnity bond.” In the second case the answer alleged as an additional defence, that at the time the judgment of the administrator was rendered against the plaintiffs in error, they extended the time for its payment for a period of sixty days, without the knowledge or consent of the defendants, and without any consideration to them. These allegations of the answers were put in issue.
The defendants prevailed in the trial court in both cases, and they are brought here on error to judgments of affirmance by the circuit court, and have been argued and submitted together.
The facts constituting the plaintiffs’ cause of action, in each of the cases, were established on the trial by the records of the probate and common pleas courts, and the sheriff’s execution docket. The defendants introduced in evidence, an entry on the records of the probate court, showing that on the settlement of the executor’s first account, in December, 1893, a balance of $506.91 was found in his hands subject to distribution, one half of which he was then ordered to pay to Mary E. Wank, “and keep the remainder of said $506.91, invested on interest with good and sufficient security, and to pay to the said Samantha McElroy, the interest thereon *235 from time to time, as required by the terms of said will and bond, reducing the remainder of the property and choses in action in his hands into money, and to report his proceedings to this court, together with such further report as the law may require.” This balance so found in the hands of the executor and ordered distributed, remained undistributed by him when his final account was settled in December, 1894; and on that settlement he was charged up with the whole amount, and an order of distribution thereof then made as has already been stated.
The question is thus presented whether the defendants are bound to indemnify the plaintiffs as sureties on the executor’s bond, against loss or damage suffered by them in the payment of liabilities arising from the failure of the executor to make proper distribution of money undistributed when the indemnity bond was executed, and which was thereafter, on settlemet of his final account, found to be in his hands, and then ordered to be paid by him according to law and the will, it being shown that he had theretofore received the money and been ordered on settlement of a prior account to make distribution and investment of the same; or, are they bound only for such liabilities as the plaintiffs should incur from the failure of the executor to make proper application of moneys and effects of the estate which came to his hands after the execution and approval of the indemnifying bond?
The indemnity bond was executed and approved in conformity with section 6208, Revised Statutes, which provides that: “If any executor or administrator shall waste, or unfaithfully administer the estate, the court grant *236 ing the letters may, if it thinks fit, on the application of any surety in the administration bond, order such executor or administrator to render an account, and to execute to such surety a bond of indemnity, with surety or sureties approved by the court; and upon neglect or refusal to execute such bond of indemnity, within the time ordered by the court, it may remove him, and revoke his letters testamentary, or letters of administration, and appoint another administrator in his place.”
The statute, in requiring, as part of the proceeding for obtaining the bond, that the executor shall render an account which may show waste or unfaithful administration, seems to contemplate that, as a condition of his right to continue in charge of the trust on the responsibility of the sureties on his bond, he shall indemnify them against such liabilities as his account may disclose, and all then existing, as well as those that should thereafter arise from his default. And there is reason why the indemnity bond should have that operation, if a fair construction of its condition will warrant it. If the bond be not given, the executor is subject to immediate removal, and, in that event, his sureties might at once seek and obtain ample indemnity and protection against all liabilities growing out of their suretyship relation. This remedy they are induced to forego by the giving of the indemnity bond, the purpose of which is to prevent the removal of the executor and protect his sureties against any loss for which he would be answerable to them. And in this, as well as in the fact that the bond is given in a legal proceeding connected with the settlement of the estate, under an authorized order of a court having jurisdiction of the persons and subject matter, adequate consideration is found for *237 the bond, and the obligation of the sureties thereon, as indicated. It is not intended to hold that the statute will not permit a bond which limits the obligation of the makers to such loss or liability only as should arise from the failure of the executor' to properly pay and account for moneys or assets of the estate that should come to his hands after its execution, or, that when so made, the sureties on it could be held beyond its terms. The bond in question here is not so limited. Its condition is “to save and keep” the obligees harmless from all loss or damage by reason of being sureties on the bond of Bronson as executor of the Lehman estate, and therefore, in terms, binds the makers of the bond to indemnify the obligees against any loss or damage which the latter should sustain by the payment thereafter of any existing or future liability arising out of their relation as sureties on the executor’s bond. In Foster v. Wise, Admr., 46 Ohio St., 21, the court held that where, after assets of an estate had been converted by an administrator to his own use, he was required to, and gave a new administration bond, the sureties thereon were bound for his indebtedness, so incurred, to the estate. In Corrigan v. Foster, Admx., 51 Ohio, St., 225, this decision was approved, and the sureties on the new bond were allowed recourse for their reimbursement, on the former administration .bond. If when the new bond was given, the sureties thereon had obtained a bond, of indemnity against all loss or damage by reason of their becoming such sureties, it can scarcely be doubted that the makers of the indemnity bond would have been bound for the amount thereafter paid by the sureties on the new administration bond in satisfaction of such prior liabil *238 ity of the administrator to the estate. And, it is certainly not less clear that the bond executed by the defendants in the cases before us, requires them to pay the plaintiffs the loss they sustained by the payment of liabilities of the executor existing when the defendants gave their' bond of indemnity. When that bond was given the suretyship of the plaintiffs for Bronson had already existed for a considerable time, and it was probable that liabilities for his default had then been incurred; so that, the inference would seem stronger that it was the intention of the bond to cover such liabilities, than if the plaintiffs had first become sureties for Bronson when the indemnity bond was given. While the promise of the obligors was to be performed in the future, it was, in effect, that they would be responsible for all damages sustained by the obligees on account of their existing surety-ship. The balance which the executor was ordered to distribute, on the settlement of his first account, remaining in his hands undistributed when the indemnity bond was given, was then in contemplation of the law, in his hands to be administered. The damages, to recover which the plaintiffs brought their actions below, were damages sustained by them in the payment, after the execution of the indemnity bond, of liabilities that arose by reason of their being sureties of Bronson as executor, and the obligation of the defendants therefor, is therefore within the express terms of the bond.
As has already been noticed, the answer in the second case plead as a further defence that, at the time of the rendition of the judgment in favor of the administrator, which the plaintiffs alleged in their petition they had paid, *239 “ the payment of the judgment so rendered was extended by said plaintiffs for a period of sixty days, without the knowledge or consent of these defendants, and without any consideration moving to them therefor at the time, and that by reason of said extension these defendants were and are released from all and every liability upon the claim and cause of action mentioned in the petition.”
This answer is insufficient as a defense, because it fails to allege any consideration, or valid agreement, for the extension of time, or that it was entered of record. Woolworth v. Brinker, 11 Ohio St., 593; Brandt on Suretyship, Sec. 377. The plaintiffs nevertheless replied to the defense, and the evidence given in its support consisted of the following statement appended to the journal entry of the judgment : “And by agreement of the parties, execution is stayed sixty days.” If this statement in the entry were regarded as importing a valid agreement made on sufficient consideration, which would prevent the issue of an execution on the judgment within the specified period, it would not, in our opinion, operate to release the defendants from their obligation on the indemnity bond. They were not sureties to the plaintiff in the judgment by whom the stay of execution was granted; nor, was he their creditor; nor was the bond involved in that ac-' tion. Neither were the sureties on the executor’s bond against whom the judgment was rendered, at that time creditors of the defendants here, the sureties on the indemnity bond. The obligation of the latter was not to pay the judgment creditor if the executor and his sureties failed to do so, but was to pay the sureties whatever they should be required to pay on the judgment, and, therefore, until pay *240 ment by them they did not, and conld not, become creditors of the sureties on the indemnity bond, nor yet of the executor. So that, when the stay of execution was granted, the plaintiffs here were not creditors thereby extending time to the principal debtor, but were themselves debtors receiving an extension, if the stay of execution amounted to such extension. Hence, the relation did not then exist between these parties that is necessary to the proper application of the rule which discharges a surety when a valid agreement is made without his consent, between his principal and the creditor, for an extension of time for the payment of the debt.
Then, payment of the judgment immediately upon its rendition, or within sixty days thereafter, was not essential to the plaintiff’s right of action on the indemnity bond; and, since their right could not accrue until its payment by them, delay on the part of the judgment creditor in enforcing payment by execution, might result in advantage to the sureties on the bond. But, whether it would or not, the stay of execution for any period, could not prevent the sureties in the judgment from malting payment without execution at any time during the stay, nor deprive them of their remedy against the property of the principal for reimbursement, or on the indemnity bond. And, as the sureties on that bond were not parties to the judgment, it is not apparent how any right they might have to pay the judgment, or any remedy of theirs against Bronson, was impaired or suspended by the stay of execution granted by the judgment creditor. The reason of the rule invoked is therefore lacking in this case.
The case of Way v. Hearn, 108 C. B. (N. S.), 774, is closely analogous, in principle, to this one. There *241 the Bank was creditor, Read principal debtor, Way his surety, and Hearn agreed to pay the surety half of any loss he might sustain in the transaction. After the maturity of the debt, by agreement between the creditor, principal, and surety, without Hearn’s knowledge, the time of payment was extended by renewal of the obligation. Way was compelled to pay the debt on maturity of the renewal, and then sued Hearn on his indemnity agreement, for half the amount. Hearn answered that he was released by the extension. The court held he was not: that the case did not come within the rule by which a surety is discharged by giving time to the principal.
The judgments below are reversed. And, as there is no dispue about the material facts, final judgment may be rendered here for the plaintiffs in error.

Judgment accordingly.

Speah, J., dissents from the first and third paragraphs of the syllabus and from the judgment.